**In re SEARCH WARRANT (SEALED).**

**No. 86–5150.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
Oct. 16, 1986.

Decided Jan. 28, 1987.

Rehearing and Rehearing En Banc
Denied Feb. 27, 1987.

---

Joshua D. Lock, Lock and Lock, Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., Timothy B. Haney, Asst. U.S. Atty., Harrisburg, Pa., for appellee.

Before GIBBONS and BECKER, Circuit Judges, and FULLAM, District Judge [*]

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by a physician being investigated for possible insurance fraud from an order of the district court denying a motion that, if granted, would in effect suppress as evidence certain of his medical records seized pursuant to a search warrant. There has been no indictment and, insofar as the record reveals, no grand jury has initiated an investigation into the alleged wrongdoing. This appeal consequently requires us to consider as threshold matters both the appealability of the district court's order at this early stage of the criminal process and the physician's

[*] Honorable John P. Fullam, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

standing, for he asserts his patients' privacy interests as the basis for suppression.

█ We find that the order is appealable because it is sufficiently independent from the anticipated criminal proceedings against the physician. Additionally, we also find that the physician has standing, for only he is in a position to protect these patients' privacy rights. We therefore reach the merits of the physician's claim, requiring us to balance the individual privacy interests in the patients' medical records against the legitimate interests of the government in securing the information contained therein. Finding that the district court did not err in performing this delicate balancing,[1] we affirm the district court's order denying the physician's motion.

## I.

The physician with whom we are concerned is a subject of a federal criminal investigation concerning the alleged submission of multiple billings to Pennsylvania Blue Shield and Medicare for medical tests that were performed only once and that in some cases may not have been medically necessary. Believing that information relevant to this investigation was contained in the medical records of certain of the physician's patients, on February 4, 1986 a Special Agent of the Federal Bureau of Investigation took a search warrant affidavit before a United States Magistrate for the Middle District of Pennsylvania. The Magistrate, finding probable cause, issued a warrant that authorized the FBI to search the offices of the physician and his professional corporation. The warrant also authorized the FBI to seize certain specified property:

1. Appointment books from January 1984 through October 1985.
2. For each of the following 210 named patients:
   A. All medical records.
   B. All account ledger cards from January 1984 through October 1985.
   C. All medical insurance claim forms from January 1984 through October 1985.
   D. All Explanation of Blue Shield Benefits forms.
   E. All Explanation of Medicare Benefits forms.

This property was seized when the warrant was executed on February 5, 1986.

Later in the day that the warrant was executed, the physician filed a "Motion to Enjoin or, in the Alternative, for Relief From, Execution of Search Warrant" in the District Court for the Middle District of Pennsylvania. The physician alleged that the warrant violated the constitutional right to privacy in that it breached his patients' privilege against disclosure of confidential medical records. Within two days after this motion was filed, the government agreed to photocopy the medical records, place the copies under seal with the Clerk of Court, and return the originals.

By order dated February 26, 1986, the district court denied the physician's motion and directed the clerk of court to deliver the photocopies of the medical records to the United States Attorney for use in investigation and possible prosecution. The order also directed the government to handle the medical records with due regard for the confidential nature of the information they contained:

The United States Attorney, the FBI and all persons acting on behalf of the government, are directed to treat said records and the information contained therein as confidential. No disclosure of said information shall occur except as reasonably required in connection with its investigation and/or presentment to a grand jury.

To further aid in maintaining confidentiality, the record of the proceedings were placed under seal.

On February 28, the physician requested the district court to stay its order pending

---

1. Because this balancing involves a question of law, our standard of review is plenary. *See,* *e.g., United States v. Felton,* 753 F.2d 276, 278 (3d Cir.1985).

appeal. The court refused. The physician now appeals seeking reversal of the district court's February 26 order, which denied an injunction against the government's review of the medical records or their disclosure to any person or investigative body.

## II.

Although the physician has not been indicted, the search warrant was sought, issued and executed within the frame of reference of an ongoing criminal investigation of which the physician is the target. Hence, our frame of reference for analysis of appealability and standing is the jurisprudence in criminal cases. We analogize the relief sought to a motion to suppress.[2]

■ An appeal is not generally available from the denial of a pre-indictment motion to suppress evidence before the conclusion of trial, see *DiBella v. United States*, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), because the denial is "merely a step in the criminal process, and any rights involved are adequately protected in subsequent trial proceedings." *United States v. Premises Known as 608 Taylor Ave.*, 584 F.2d 1297, 1300 (3d Cir.1978). A significant exception, however, allows for immediate appeal of orders that are sufficiently independent from the anticipated criminal proceeding. *See id.* We must therefore decide if the district court's order is of sufficient independence from the anticipated criminal proceeding against the physician to be immediately appealable.

A request for pretrial appellate review of the denial of a motion to suppress evidence usually arises when the movant seeks to assert his own constitutional rights. *See, e.g., G.M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977); *United States v. Furina*, 707 F.2d 82 (3d Cir.1983); *Hill v. United States*, 346 F.2d 175 (9th Cir.), *cert. denied*, 382 U.S. 956, 86 S.Ct. 433, 15 L.Ed.2d 537 (1965). In this usual situation, there is sufficient independence "[o]nly if the motion is solely for return of property and is in no way tied to

a criminal prosecution *in esse* against the movant." *DiBella*, 369 U.S. at 131–32, 82 S.Ct. at 660. It is not and cannot be disputed that the instant motion seeks the suppression of evidence, not just its return. Indeed, the records in question have been copied and the physician again possesses the originals. If he were asserting a violation of his own rights, his appeal would certainly be foreclosed under *DiBella* as insufficiently independent of the anticipated criminal proceeding against him. *See, e.g., United States v. Furina*, 707 F.2d 82, 84 (3d Cir.1983).

■ Here, however, the interests of others besides the physician are implicated by the district court's order. Because of these third-party rights, we hold that the order is of sufficient independence from the anticipated criminal proceeding against the physician to be immediately appealable. For the physician's patients, who do not face potential criminal charges, the scrutiny of their medical records is not "merely a step in the criminal process," *608 Taylor Ave.*, 584 F.2d at 1300. Moreover, any privacy interests the patients may have are immediately threatened by the government having obtained such highly sensitive personal information as may be contained in their medical files, and these interests will not be "adequately protected in subsequent trial proceedings." *Id.* If the patients' rights to privacy have been breached, relief must be immediately granted; appellate review should not be postponed—and perhaps entirely foreclosed—by a rule which would make such review available only if and when the physician is indicted, prosecuted, and convicted.

Our holding on this point might well be different if it were to appear that the physician has asserted the privacy interests of his patients as a mere sham to secure immediate appellate review of the district court's order, or if his arguments in support of the rights he asserts were frivolous. No sham is apparent, however, from the record before us. The physician

2. *See infra* at 72 n. 4.

asserted this claim the very day that the warrant was executed and has diligently pressed the matter both before the district court and before us. Although he has an obvious personal interest in suppressing the evidence in question, that fact does not overcome his apparent good faith in pressing the interests of his patients. Moreover, the asserted privacy interest cannot be considered frivolous. As we develop more completely below, *see infra* at 71–72, a privacy right undeniably exists and is applicable to the compelled disclosure of medical records.

Of course, if the physician has no standing to assert the privacy interests of his patients, he could not now appeal the district court's order. We find, however, that this situation is within the plain purview of our decision in *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir. 1980), and that the physician therefore does have standing to press his patients' claims. As the government itself concedes, the physician "is the proper proponent to assert this claim on behalf of his patients." Government's Brief at 20; *see also Westinghouse*, 638 F.2d at 574 ("As a practical matter, the absence of notice ... of the subpoena means that no person other than [the movant] would be likely to raise the privacy claim."); *cf. Singleton v. Wulff*, 428 U.S. 106, 118, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976) (allowing physician to assert privacy rights of his patients); *Griswold v. Connecticut*, 381 U.S. 479, 481, 85 S.Ct. 1678, 1679, 14 L.Ed.2d 510 (1965) (same).[3]

### III.

On the merits, the physician contends that his patients have a privacy interest under the United States Constitution in their medical records, and the government does not challenge this claim. It is indeed clear beyond peradventure that "the Constitution embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of government." *Thornburgh v. American College of Obstetricians*, — U.S. —, 106 S.Ct. 2169, 2184, 90 L.Ed.2d 779 (1986). This constitutional right to privacy extends to "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977); *Trade Waste Management Ass'n, Inc. v. Hughey*, 780 F.2d 221, 223 (3d Cir.1985); *see also* Kurland, *The Private I*, The University of Chicago Magazine 7, 8 (Autumn 1976) ("The concept of a constitutional right of privacy [includes] the right of an individual not to have his private affairs made public by the government."). And as courts have held, medical records are clearly within this constitutionally protected sphere. *See, e.g., Whalen*, 429 U.S. at 598, 97 S.Ct. at 875; *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir.1980) ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."); *Shoemaker v. Handel*, 608 F.Supp. 1151, 1159 (D.N.J.1985) ("There is a privacy interest in avoiding disclosure to government agents of personal medical information.").

Our recognition that this privacy right exists and is applicable to the compelled disclosure of medical records, however, does not end the inquiry. The protection afforded by the right to privacy is not absolute. The individual privacy interest in the patients' medical records must be bal-

---

**3.** Despite this concession, the government argues that "prudential concerns" militate against a finding that the physician has standing to press the instant appeal. Under the jurisprudence on the matter, however, we find this contention specious. Under the circumstances, the physician has displayed a sufficient "stake in the outcome" to assure "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Westinghouse*, 638 F.2d at 574 (quoting Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). Because the physician has displayed this necessary degree of adverseness to the government's position, no prudential concerns strip him of standing. *See Separation of Church and State, Inc. v. HEW*, 619 F.2d 252 (3d Cir.1980).

anced against the legitimate interests of the state in securing the information contained therein. *Cf. Whalen, supra; Westinghouse, supra.*[4]

The task of balancing these interests is not one we face anew. In *Westinghouse,* we enumerated "[t]he factors which should be considered in deciding whether an intrusion into an individual's privacy is justified":

> ... the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

638 F.2d at 578.

■ As applied to the facts of this case, the *Westinghouse* factors are easily satisfied. *Cf. United States v. Colletta,* 602 F.Supp. 1322 (1985) (holding that seizure

pursuant to search warrant of medical files did not violate patients' privacy rights). As to the first four factors, there is no indication of harm to the patients because of the information contained in their records or the dissemination that is to be expected. The medical records of the physician's patients are of the same type as those that were held subject to subpoena in *Westinghouse,* and the harm in disclosure cannot be considered any greater, hence, in this respect, *Westinghouse* controls.[5] As the Court pointed out in *Whalen,* the identities of the patients involved are already known through insurance submissions, and their privacy interests are thereby diminished. *See* 429 U.S. at 603, 97 S.Ct. at 878; *accord In re Zuniga,* 714 F.2d 632, 641–42 (6th Cir.), *cert. denied,* 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983). Additionally, two separate mechanisms exist to guard against unauthorized disclosure. Initially, and prior to any submission to a grand jury, the district court's special directions operate to maintain the confidentiality of these records. Thereafter, as the physician himself concedes, presentation to a grand jury will not lead to untoward dissemina-

---

**4.** *Whalen* and *Westinghouse,* in common with most cases that balance the privacy interests in medical records with the state interest in information collection, do not concern the procurement of records pursuant to valid search warrant. In *Whalen,* the Supreme Court was faced with a portions of the New York State Controlled Substances Act of 1972, which mandated that a copy of prescriptions for certain drugs be filed with the State Department of Health. In *Westinghouse,* we reviewed an administrative subpoena duces tecum that was issued by the National Institute of Occupational Safety and Health pursuant to 29 U.S.C. §§ 657(b), 669(b), 671(c), and required the production of certain medical records. We do not believe that either of these situations is sufficiently different from the valid search warrant situation that we now face to compel the conclusion that the cases ought be distinguished. *Accord United States v. Colletta,* 602 F.Supp. 1322 (E.D.Pa.1985). The only possible distinguishing point is that a search warrant necessarily interposes a judicial determination of reasonableness between the government and the individual prior to any disclosure. Within the context of our analysis, however, this is merely a distinction without a difference. If the government can obtain such

information without a judicial determination, there is no reason to prevent its acquisition when such guidance is involved.

**5.** The physician relies heavily on the case of *Hawaii Psychiatric Assoc. v. Ariyoshi,* 481 F.Supp. 1028 (D.Hawaii 1979). Because the instant appeal does not involve psychotherapeutic care, we need not decide whether psychiatric records of the type at issue in *Hawaii Psychiatric* merit a higher degree of privacy sufficient to outweigh legitimate governmental interests in acquiring the information contained therein. *See, e.g., id; cf. Taylor v. United States,* 222 F.2d 398, 401 (D.C.Cir.1955) (finding heightened privacy interest in psychiatric records under state privilege law); *In re "B,"* 482 Pa. 471, 394 A.2d 419, 425 (1978) (same); *but cf. Developments in the Law—Privileged Communications,* 98 Harv. L.Rev. 1450, 1519 (1985) ("the glib distinctions frequently drawn between the [psychotherapist-patient and physician-patient] relationships oversimplify their actual dynamics"). Nor do we need to decide if the medical records of victims of socially stigmatizing diseases, such as AIDS, deserve to be accorded higher privacy interests. *Cf.* Note, *The Constitutional Rights of AIDS Carriers,* 99 Harv.L.Rev. 1274, 1287–89 (1986).

tion. *See* Appellant's Brief at 17; *see also* Fed.R.Crim.P. 6(e) (protecting confidentiality of grand jury proceedings).

The final two *Westinghouse* factors are also satisfied. There is an express statutory mandate to investigate and determine the sort of fraud under investigation here, *see, e.g.,* 42 U.S.C. § 3525(a)(3) (authorizing administrative subpoena of medical files), a mandate which "ranks with the other public interests which have been found to justify intrusion into records and information normally considered private." *Westinghouse,* 638 F.2d at 579. Moreover, the prosecution has demonstrated a reasonable need for the entire medical record.[6] Because the physician requested that insurers pay for care rendered or tests performed on certain dates, only the patients' medical records will reveal to the grand jury whether the physician performed the specified services at the specified time and whether the services were medically necessary. Further, only by examining these records can a determination be made whether impropriety was involved if multiple billing is suspected from contemporaneous performance of related tests.

Because significant government interests in investigation clearly outweigh any individual privacy interests, the *Westinghouse* factors have been satisfied. The district court's order denying the physician's motion will be affirmed.

---

6. In reading this conclusion we rely in part on our review of the affidavit by which the government originally secured the search warrant.