632 A.2d 453

**DR. K., et al.**

v.

**STATE BOARD OF PHYSICIAN QUALITY ASSURANCE.**

**No. 138, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Nov. 2, 1993.

Certiorari Denied March 9, 1994.

---

William A. Ehrmantraut (David A. Roling and Wharton, Levin, Ehrmantraut, Klein & Nash on the brief), Annapolis, for appellants.

C. Frederick Ryland, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before BLOOM, CATHELL and HARRELL, JJ.

CATHELL, Judge.

This is an appeal from an order of the Circuit Court for Montgomery County denying a Motion to Quash Subpoena or in the Alternative for a Protective Order, and a denial of a

Motion for Reconsideration. The State Board of Physician Quality Assurance (the Board), appellee, received two formal written complaints that Dr. K (a psychiatrist licensed to practice in Maryland) and his former patient ("patient A"),[1] both appellants here, were having a romantic relationship, and that Dr. K was depressed and abusing alcohol.

The Board, pursuant to its legislative authority, initiated an investigation and subpoenaed Dr. K's records relating to patient A's treatment. Dr. K filed a motion in the circuit court to quash the subpoena. That motion was granted. The Board thereafter moved to rescind the order and for a hearing on the motion's merits. The request for a hearing was granted. The Board filed an opposition to Dr. K's motion to quash and its own motion to compel compliance with the subpoena. Dr. K opposed that motion and the Board responded.

A hearing was held, after which the court denied the motion to quash the subpoena, but stayed enforcement for thirty days pending a possible appeal. Patient A then entered the case, filing a Motion for Reconsideration, raising the constitutional issue of her right to privacy and requesting an order further staying the final judgment's effect. Both motions were denied. This appeal followed.[2] Appellants raise only one question on appeal:

---

1. The record in this case is sealed to protect the parties' identities. We shall refer to the parties as they have been designated in the circuit court and in the briefs.

2. The only matter litigated in the case was the issuance or non-issuance of the subpoena.

In *Baltimore City Department of Social Services v. Stein*, 328 Md. 1, 16, 612 A.2d 880 (1992), the Court noted an area where the collateral order doctrine has been applied:

We have declined to follow the *Alexander* [*v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906)] rule [a finding of contempt before appeal permitted] at least when, in the procedural posture of the case, the only matter before the trial court is the discovery order, *i.e.* the motion to quash.

The Court went on to note its holding in *Unnamed Attorney v. Attorney Grievance Commission*, 303 Md. 473, 480, 494 A.2d 940 (1985).

Does a patient's constitutional right to privacy bar the disclosure of mental health records to the Board of Physician Quality Assurance when the patient asserts such a right upon patient's physician being subpoenaed to produce those records to the Board of Physician Quality Assurance?

It does not, and we shall affirm.

Appellants' question addresses only patient A's right to privacy under the United States Constitution. The Board preliminarily argues that, because the constitutional issue was first raised in a Motion for Reconsideration which was summarily denied by the trial court, it is not properly before this Court. It cites *Dintaman v. Board of County Commissioners*, 17 Md.App. 345, 350–51, 303 A.2d 442 (1973), for the proposition that "nothing is better settled than the rule that a question as to the constitutionality of a statute will not be considered on appeal when not properly raised and decided by the lower court." *Dintaman* supports that proposition, but deciding this appeal on jurisdictional grounds would likely result in additional litigation and appeals. We shall address the issue, because it was in fact raised below and because we may decide an issue if it will "avoid the expense and delay of another appeal." Maryland Rule 8–131(a).

Appellants also argue in their brief, as Dr. K argued below, that the statutes in question do not give the Board jurisdiction to regulate Dr. K's behavior or to subpoena patient A's records. Although not clearly raised in the question presented on appeal, we shall address theses issues in the interest of judicial economy. Maryland Rule 8–131(a).

---

It has consistently been held in this State that where a court proceeding is commenced to quash or to enforce an administrative subpoena, summons, [or] search warrant ... issued by an administrative agency or official, ... and where the court's order terminates the *court* proceeding, the order is final and appealable. The fact that the *administrative* proceedings may not be terminated does not render the court order interlocutory if nothing remains to be done in the trial court.

See also *In re Search Warrant (Sealed)*, 810 F.2d 67, *infra*.

## Facts

The complaints to the Board resulted from a visit to the complainants, both of whom are physicians and colleagues of Dr. K, by Dr. K's estranged wife. She alleged that Dr. K was having a romantic relationship with a former patient and that he was depressed and drinking heavily. The complainants then visited Dr. K personally and discussed his wife's charges. After listening to Dr. K's explanation of the events, which included an admission by the doctor that he was then maintaining a romantic relationship with patient A, they informed him that they would be filing a complaint with the Board because they felt that his relationship with a former patient violated professional ethical standards for a psychiatrist.

The Board is a State regulatory agency that is legislatively empowered to license physicians in Maryland and to regulate the licensees. A weekly review panel meets to consider complaints and determine which complaints merit investigation. After reviewing the complaints against Dr. K, the panel determined that an investigation was appropriate. The Board then issued a subpoena duces tecum, pursuant to its statutory authority, for all of the records in Dr. K's custody and control concerning his treatment of patient A. Dr. K informed patient A of the request and asked if she wished to give her permission to release the records. Patient A refused. Dr. K then responded to the complaints in a letter to the Board, but refused to provide the subpoenaed records. According to the record, Dr. K has yet to be charged with any improper or illegal conduct. He is merely the subject of an administrative investigation.

### The Board's Authority Over Dr. K's Actions.

██ Initially, appellants offer two arguments as to why the Board has no authority to investigate this matter. They first argue that because Dr. K and patient A's personal relationship began *after* the doctor-patient relationship terminated it is beyond the scope of the doctor-patient relationship and thus the Board's authority "to 'protect' Patient A" is suspect. In

support, appellants cite *McDonnell v. Commission on Medical Discipline,* 301 Md 426, 483 A.2d 76 (1984).

In *McDonnell,* the question was "whether a physician's attempt to intimidate adverse witnesses scheduled to testify against him at a medical malpractice trial constitutes '[i]mmoral conduct of a physician in his practice as a physician' in violation of [the] Maryland Code...." *Id.* at 428, 483 A.2d 76. The commission found as a matter of law that Dr. McDonnell had violated the Code provision by having two medical experts contact the doctors scheduled to testify against him at trial in order to intimidate the doctors. *Id.* at 431, 483 A.2d 76. The Court of Appeals disagreed, holding that the conduct did not fall under the statute as it then appeared. The statute's plain language restricted disciplinary action to "[i]mmoral conduct of a physician in his practice as a physician." *Id.* at 435, 483 A.2d 76 (citing Md.Code Ann. Art. 43 § 130(h)(8) (1957, 1980 Repl.Vol.)).

The legislature has since amended the relevant statutory language, enlarging the Board's area of authority. That provision was recodified in 1981 Md.Laws, ch. 8, as Md.Health Occ.Code Ann. § 14–504. The language in what is now Health Occupations article, section 14–404(a)(3), was amended in 1988 Md.Laws, ch. 109, to read: "(3) Is guilty of *immoral or unprofessional* conduct in the practice of medicine...." (Emphasis added.) Further, the Board has the power to initiate investigations upon receipt of a signed, written complaint, Md.Code (1991 Repl.Vol. & 1993 Cum.Supp.), § 14–205(a)(2) of the Health Occ. Article (Health Occ.) and powers that aid in conducting investigations, *id.* at § 14–401 *et seq.*

Both parties in their briefs cite the American Medical Association, *The Principles of Medical Ethics,* section 2, annotation 1, as a probable basis for the Board's belief that Dr. K's behavior *may* be unprofessional. Suspected unprofessional conduct in his practice would give the Board statutory authority to investigate. *The Principle of Medical Ethics,* section 2 states:

**SECTION 2**

A physician shall deal honestly with patients and colleagues, and strive to expose those physicians deficient in character or competence, or who engage in fraud or deception.

Annotation 1 states, in full:

1. The requirement that the physician conduct himself/herself with propriety in his/her profession and in all the actions of his/her life is especially important in the case of the psychiatrist because the patient tends to model his/her behavior after that of his/her therapist by identification. Further, the necessary intensity of the therapeutic relationship may tend to activate sexual and other needs and fantasies on the part of both patient and therapist, while weakening the objectivity necessary for control. Sexual activity with a patient is unethical. Sexual involvement with one's former patients generally exploits emotions deriving from treatment and therefore almost always is unethical.

It is premature for us to decide whether Dr. K's records indicate unprofessional conduct in his practice or a violation of the statute, and thus whether the Board has disciplinary jurisdiction, or whether patient A's records are relevant to the ultimate issue the Board might have to address. That is the reason for the investigation. Dr. K's admission that he is having a "romantic relationship" with patient A, coupled with the statutory language and the statement of ethics is certainly a basis upon which to begin an investigation. An investigation is not a statutory violation or disciplinary action; it is used to determine if one has occurred and the other is necessary. We cannot say that the statute does not give the Board the authority to begin an investigation in this case.

■ Second, appellants argue that patient A's records should not be disclosed because she has not complained about Dr. K's behavior. If a patient's complaint were necessary for the Board to investigate, there would never be full investigations in cases where the doctor was able to persuade the patient not to complain. The argument has no merit.

We also consider the Board's direct statutory authority to view the records. Maryland Code (1990 Repl.Vol., 1993 Cum. Supp.) § 4–307 of the Health–General Article (Health–Gen.) gives the Board the right to examine patient A's records, and reads, in pertinent part:

(h) ... (1) A health care provider shall disclose a medical record without the authorization of a person in interest:

. . . .

(vi) 1. In accordance with a subpoena for medical records on specific recipients:[3]

A. To health professional licensing and disciplinary boards[4] for the sole purpose of an investigation regarding licensure, certification, or discipline of a health professional or the improper practice of a health profession. . . .

Further, § 4–307(h)(4) reads:

This subsection may not preclude a health care provider, a recipient, or a person in interest from asserting in a motion to quash or a motion for a protective order any constitutional right or other legal authority in opposition to disclosure.

A constitutional right to privacy, as we have said, was asserted. We now address that issue.

### Privacy Right of Patient A in her Medical Records Under the United States Constitution

"It is, of course, no longer open to question that the right of privacy is protected by the federal constitution and that where the right is applicable, regulation limiting it must be justified by a 'compelling state interest.'" *Montgomery County v. Walsh,* 274 Md. 502, 512, 336 A.2d 97 (1975), *appeal dismissed,* 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976). *See also Neville v. State,* 290 Md. 364, 372–73, 430 A.2d 570 (1981); *Doe*

---

3. The Board has the authority to issue subpoenas pursuant to Health Occ. §§ 14–206(a) and 14–401(f).

4. The Board is both a licensing and disciplinary board. See Health Occ. §§ 14–204 and 14–301.

*v. Commander, Wheaton Police Dep't,* 273 Md. 262, 272, 329 A.2d 35 (1974). "And as courts have held, medical records are clearly within this constitutionally protected sphere." *In re Search Warrant (Sealed),* 810 F.2d 67, 71, *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3233, 97 L.Ed.2d 739 (3rd Cir.1987). *See also Whalen v. Roe,* 429 U.S. 589, 598, 97 S.Ct. 869, 875, 51 L.Ed.2d 64 (1977); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 577 (3rd Cir.1980); *Hodge v. Carroll County Dept. of Social Services,* 812 F.Supp. 593, 600 (D.Md.1992); *Shoemaker v. Handel,* 619 F.Supp. 1089, 1105–06 (D.C.N.J. 1985).

We believe that patient A has a constitutional right to privacy in Dr. K's records of her psychiatric treatment. *Whalen,* 429 U.S. 589, 97 S.Ct. 869, is often cited for extending a constitutional privacy right to the disclosure of highly personal information. *Whalen* involved a New York State statute that required doctors to submit duplicates to the State of all prescriptions written for schedule II drugs. The State recorded the information on computers and stored the copies, using the records to help reveal abuses in prescribing certain drugs. The law was challenged as unconstitutional on its face by a group of doctors and patients. *Id.* at 591–95, 97 S.Ct. at 872–74. After considering the State's physical security precautions in protecting the data, and legislative prohibition against public disclosure, the Court concluded:

> Nevertheless, disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient. Requiring such disclosures to representatives of the State having responsibility for the health of the community, does not automatically amount to an impermissible invasion of privacy.

*Id.* at 602, 97 S.Ct. at 878 (footnote omitted). The Court further held that the New York statute's impact is insufficient "to constitute an invasion of any right or liberty protected by the Fourteenth Amendment." *Id.* at 603–04, 97 S.Ct. at 878

(footnote omitted). So while the right was recognized in *Whalen,* the State's interest negated any exercise of that right.

*In re Search Warrant (Sealed),* 810 F.2d 67, was decided upon facts analogous to the instant case. In *Search Warrant,* a physician was under investigation by the Federal Bureau of Investigation for insurance fraud. The FBI believed that certain patient records were relevant to its investigation. A United States Magistrate found probable cause and issued a warrant authorizing a search of the physician's office and the seizure of certain specified records. *Id.* at 69. The day of the seizure, the physician filed a "Motion to Enjoin or, in the Alternative, for Relief From, Execution of Search Warrant" in federal district court. *Id.* The district court denied the motion, but ordered the record sealed and the information treated as confidential. The physician then requested a stay of the order. That request was denied also. *Id.*

Throughout the proceedings the physician was not under indictment, he was only being investigated. The Third Circuit allowed the unusual appeal because

> any privacy interests the patients may have are immediately threatened by the government having obtained such highly sensitive personal information as may be contained in their medical files.... [A]ppellate review should not be postponed—and perhaps entirely foreclosed—by a rule which would make such review available only if and when the physician is indicted, prosecuted, or convicted.

*Id.* at 70.

The Court, after balancing the recognized privacy right against the state's interest, held that the "significant government interests in investigation clearly outweigh any individual privacy interests...." *Id.* at 73. It considered, among other things, that

> the identities of the patients involved are already known ... and their privacy interests are thereby diminished. Additionally, two separate mechanisms exist to guard against unauthorized disclosure. Initially, ... the district court's

special directions operate to maintain the confidentiality of these records. Thereafter, ... presentation to a grand jury will not lead to untoward dissemination.

*Id.* at 72–73 (citation omitted). There was also a statute expressly authorizing an administrative subpoena of medical files and a demonstrated need for government access to the records.

■ We agree with the Third Circuit's reasoning as applied to the case at bar. Patient A has a right to privacy in her medical records. That right, however, is not absolute; "[t]he individual privacy interest in the patients' medical records must be balanced against the legitimate interests of the state in securing the information contained therein." *Id.* at 71–72. *See also New York State Ophthalmological Soc. v. Bowen,* 854 F.2d 1379, 1389 (D.C.Cir.1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989); *Westinghouse,* 638 F.2d at 578; *Hodge,* 812 F.Supp. at 600; *Doe v. Borough of Barrington,* 729 F.Supp. 376, 382–83 (D.N.J.1990); *Doe v. General Services Admin.,* 544 F.Supp. 530, 546 (D.Md.1982); *Walsh,* 274 Md. at 512–14, 336 A.2d 97.

■ *Westinghouse,* 638 F.2d 570, provides an analytical framework for balancing the competing rights and interests. There, the issue was whether certain employee health records could be turned over to the National Institute for Occupational Safety and Health without the employees' authorization. *Id.* at 572–73. The Court stated, "Generally, the reporting requirements which have been upheld have been those in which the government has .advanced a need to acquire the information to develop treatment programs or control threats to public health." *Id.* at 578. In those cases where a court has allowed an intrusion into the privacy right in medical records "it has usually done so only after finding that the societal interest in disclosure outweighs the privacy interest on the specific facts of the case." *Id.* After deciding that the employees had privacy rights in their medical records, the court specified several factors to consider in the "delicate task" of weighing the government's competing interest. *Id.*

Those factors are: the type of record requested, the information it contains, the potential for harm in subsequent nonconsensual disclosure, the injury in disclosure to the relationship for which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the government's need for access, and whether there is an express statutory mandate, articulate public policy, or other public interest militating towards access. *Id.* *See also Search Warrant,* 810 F.2d at 72; *Borough of Barrington,* 729 F.Supp. 376; *Shoemaker,* 619 F.Supp. at 1106; *United States v. Colletta,* 602 F.Supp. 1322, 1327, *aff'd,* 770 F.2d 1076 (1985) (all applying the *Westinghouse* factors in weighing individual privacy rights against the government's legitimate interests). We shall apply these factors to the facts in the instant case.

*Type of record and information contained therein.*

The subpoena in this case directed Dr. K to deliver "any and all medical records" of patient A. Dr. K. was patient A's psychiatrist. Appellants represent that the records in question "are, in fact, a mirror by which one can gaze into the reflected mind of the patient.... Patient A's essence of being—the conscious and subconscious mind—[is] ensconced within the records sought...." We do not dispute that representation. We presume that the records contain at least Dr. K's notes from his sessions with patient A and any medical information, such as a physical and mental health history and a record of prescribed medication.

We understand the intensely personal and extremely delicate nature of the information contained in the records. There is a clear difference between these records and the prescription copies at issue in *Whalen,* which were not "meaningfully distinguishable from a host of other unpleasant invasions of privacy that are associated with many facets of health care." *Whalen,* 429 U.S. at 602, 97 S.Ct. at 878.

*The potential for harm in subsequent nonconsensual disclosure.*

Accounting for the personal and sensitive nature of psychiatric records, the potential for harm in subsequent disclosure

is plainly apparent. Despite great advances in public consciousness, psychiatric treatment can still carry a stigma in our society. The consequences of nonconsensual public disclosure of psychiatric records might well be harmful to patient A.

*The injury in disclosure to the relationship
for which the record was generated.*

The disclosure in this case is pursuant to Health–Gen. § 4–307(h)(1)(vi)1.A. and Health Occ. §§ 14–401(a) and (f). Under those sections the Board is entitled to subpoena and review patient A's records without her consent solely to investigate charges against Dr. K. The psychiatrist-patient relationship is a very personal one; any disclosure could conceivably affect the relationship. It is difficult to predict what impact the disclosure of Dr. K's records would have on any professional relationship with patient A. We note, however, that Dr. K. and patient A maintain that their patient-psychiatrist relationship ended several months before the personal relationship developed. Therefore, by appellants' own admissions, there would be no injury to the patient-psychiatrist relationship, as it is their view that it did not exist at the time the records were subpoenaed.

*The adequacy of safeguards to prevent
unauthorized disclosure.*

The unauthorized disclosure of patient A's records is prohibited by several statutes.

Health–Gen. § 4–301 *et seq.,* address the confidentiality of medical records in general. Section 4–302(a) requires health care providers to keep medical records confidential, and allows disclosure only as provided by Maryland law. Section 4–302(b) provides exceptions for administrative records and disclosures governed by other confidentiality provisions.

Section 4–302(d) reads:

*Redisclosure.*—A person to whom a medical record is disclosed may not redisclose the medical record to any other person unless the redisclosure is:

(1) Authorized by the person in interest;

(2) Otherwise permitted by this subtitle....

There is no other provision in this subtitle permitting *redisclosure* of mental health records by the Board.[5]

Under § 4–309, disclosing a medical record in violation of the subtitle subjects the violator to a possible criminal fine and to actual damages in a civil suit.

Health Occ. §§ 14–401 *et seq.*, give the Board the authority to take disciplinary actions against physicians. Section 14–410 mandates that the Board's records and decisions are not discoverable in criminal or civil proceedings unless all parties stipulate to disclosure, a civil action is brought by the party being investigated, or the information is otherwise admissible as evidence.

Section 14–411(b) provides that, "[e]xcept as otherwise expressly provided in this section, the Board or any of its investigatory bodies may not disclose any information contained in a record." The section goes on to list the bases upon which the Board can disclose information. The permitted disclosures are those necessary for the Board to effectuate its purpose—disciplining physicians. They are not public disclosures that could cause patient A significant harm.

Health Occ. § 14–501, discusses "medical review committees." Section 14–501(b)(1) defines a medical review committee as "[a] regulatory board or agency established by State or federal law to license, certify, or discipline any provider of health care...." This definition clearly encompasses the Board. Section 14–501(d)(1) reads:

Except as otherwise provided in this section, the proceedings, records, and files of a medical review committee are not discoverable and are not admissible in evidence in any civil action arising out of matters that are being reviewed and evaluated by the medical review committee.

---

**5.** Initial disclosure to the Board is permitted without the patient's authorization by Health–Gen. § 4–307(h)(1)(vi)1.A. See discussion *infra.*

The only exceptions are when the civil proceeding is brought by a party who claims to be aggrieved by the medical review committee's decision and when the records before the committee are otherwise subject to discovery and introduction as evidence in a civil trial. *Id.* at § 14–501(e).

The legislature has certainly addressed the area of confidentiality. Disclosure of medical records is restricted and penalties are prescribed for unauthorized disclosure. As our role is not to legislate but to interpret laws, we conclude that the legislature's actions in this area are adequate to safeguard against unauthorized disclosure.

### *The government's need for access.*

Health Occ. § 14–205(a)(2) empowers the Board to investigate any written complaint that alleges violations of Title 14—governing the licensing and conduct of physicians in Maryland. It may discipline a physician licensed to practice in Maryland for a broad range of behaviors, including "immoral or unprofessional conduct in the practice of medicine," professional incompetence, habitual intoxication, and practice below the standard of care. Health Occ. §§ 14–404(a)(3), (4), (7) & (22). According to the Board, each behavior is implicated in the complaints filed against Dr. K.

To deny the Board access to Dr. K's patient records to investigate allegations of professional misconduct is to deny it the ability to carry out its legislative mandate and make decisions based on facts. Assuming, *arguendo*, that Dr. K did engage in unprofessional conduct in his treatment of patient A, and that his unprofessional conduct resulted in a post-treatment romantic relationship with patient A, a lack of access to patient A's records effectively forecloses any meaningful investigation into that conduct and any basis for disciplinary action. The Board's mission, to regulate the use of physicians' licenses in Maryland, requires that it have access to the records generated directly from the use of that license.

*Whether there is an express statutory mandate,
articulated public policy, or other public
interest militating towards access.*

There is indeed an express statutory mandate allowing the Board access to patient A's records. Health–Gen. § 4–307, addressed earlier. Appellee, in its memorandum supporting its Motion to Compel and its Opposition to Motion for a Protective Order or to Quash, in discussing this statute, states:

The provision requiring disclosure of the records upon subpoena: 1) is in the mental health record portion of the statute, 2) is a mandatory disclosure, 3) is a disclosure expressly without the consent of the patient, and 4) over-rides any privilege.... The General Assembly, after five years of drafting on the legislation, consideration during two sessions, with an intervening summer study, obviously made a policy choice in this area.

Early in the process of creating this legislation, in January, 1986, the Attorney General issued a Report to the Governor on the Confidentiality of Mental Health Records. The report noted the conflicts between the then existing privacy provisions in the various health records statutes and stated that the elimination of those contradictions was a goal of the legislation. The report recommended that "[i]deally, a balance should be reached between the patient's right to confidentiality and society's sometimes powerful need to have access to the patient's records." Office of the Attorney General, *Report to the Governor on the Confidentiality of Mental Health Records* 9 (January, 1986) (on file with Maryland State Law Library). The report further recommended a comprehensive reference statute dealing with disclosure of mental health records. *Id.* at 10.

One statute that ultimately resulted from this process is Health Gen. § 4–307, set forth in part above. It is evident that the statute's clear language results from a policy decision arrived at through the cooperation of the State's executive and legislative branches.

Further, the State has a significant interest in protecting its citizens and the public health.

> [N]o person has an absolute vested right to practice medicine, but only a conditional right which is subordinate to the police power of the State to protect and preserve the public health. The State, in the performance of its duty to protect and preserve the public health, has the power, within constitutional limitations, to regulate the practice of medicine by those engaged therein. This regulatory power is justified by the fact that the practice of medicine requires special knowledge, training, skill and care, that health and life are committed to the physician's care, and that patients ordinarily lack the knowledge and ability to judge his qualifications.

*Commission on Medical Discipline v. Stillman,* 291 Md. 390, 405–06, 435 A.2d 747 (1981) (citing *Aitchison v. State,* 204 Md. 538, 544, 105 A.2d 495, *cert. denied,* 348 U.S. 880, 75 S.Ct. 116, 99 L.Ed. 692 (1954)) (citation omitted). *See Pitts v. State Bd. of Examiners,* 222 Md. 224, 226, 160 A.2d 200 (1960); *Cocco v. Maryland Comm'n on Medical Discipline,* 39 Md.App. 170, 173, 384 A.2d 766 (1978), *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979).

In the case *sub judice,* the State, through the Board, seeks a limited, but nonetheless significant, invasion into patient A's privacy. A weighing of all the factors discussed above leads us inexorably to the conclusion that the State's interest outweighs patient A's privacy right in this instance. To give a patient, in effect, a veto over the Board's power to regulate licensed physicians would be to eviscerate the Board's ability to protect the larger public interest. This is especially true in a case such as this—where the patient may not object to, or may even support, the physician's allegedly unprofessional or unethical behavior. A decision in favor of patient A would allow those physicians who are unscrupulous and in a position to exert influence over their patients to stop a *preliminary investigation* by the Board in its tracks.

We emphasize that as yet no charges have been filed and no disciplinary action has been taken against Dr. K. At this stage, it is just as likely as not that the Board will agree with Dr. K's defense to the complaints filed against him and take no disciplinary action. Further, there are statutory provisions protecting patient A's records from being used for any purpose other than this investigation of Dr. K. Patient A may be entitled to sue for civil damages for any unauthorized disclosure of her medical records.

We shall briefly address appellants' concern regarding the hearsay basis for the initial complaints. First, "administrative agencies are not bound to observe the 'technical common law rules of evidence.'" *Stillman,* 291 Md. at 422, 435 A.2d 747 (quoting *Dickinson–Tidewater v. Supervisor,* 273 Md. 245, 253, 329 A.2d 18 (1974)); *Hill v. Baltimore Co.,* 86 Md.App. 642, 658, 587 A.2d 1155, *cert. denied,* 323 Md. 185, 592 A.2d 178 (1991); *Department of Public Safety v. Scruggs,* 79 Md. App. 312, 321, 556 A.2d 736 (1989); *Tron v. Prince George's County,* 69 Md.App. 256, 261, 517 A.2d 113 (1986). *See* Arnold Rochvarg, *Hearsay in State Administrative Hearings: The Maryland Experience and Suggestions for Change,* 21 U.Balt.L.Rev. 1, n. 2, *passim* (1991). Second, the same public policy considerations that contributed to favoring the State's interest over patient A's constitutional privacy right militate against our restricting the Board's ability to gather and utilize information in deciding whether or not to conduct an investigation. Hearsay information is probably the basis for investigations in many areas of governmental licensing, from physician's licenses to liquor licenses to marriage licenses.

Furthermore, while hearsay may be the basis for an investigation by the Board, before any formal action is taken against Dr. K, he is entitled to a hearing before a hearing officer, to be represented by counsel at that hearing, and to have any factual finding supported by clear and convincing evidence. Health Occ. § 14–405.

Finally, we note that although the initial communication to the complainant doctors was indeed from Dr. K's wife, who

may well have been biased, the complainant doctors, prior to filing their complaint, met with Dr. K. in an attempt to get his side or his version of what was occurring. One of the doctors, in his complaint to the Board, informed the Board that Dr. K had himself admitted that the relationship was ongoing and of a romantic nature. The other complainant doctor informed the Board that, when Dr. K was informed that his wife had said he was having an affair with the woman identified in the case *sub judice* as patient A, he acknowledged that that assertion was valid. Additionally, in his initial response to the Board, Dr. K, though denying an "affair," admitted that he was even then maintaining a personal and romantic relationship with patient A. Thus, in view of Dr. K's own admissions to at least maintaining a romantic relationship with patient A, the alleged bias of Dr. K's wife is of little importance.

Under the circumstances of this case, we perceive no error in the Board's undertaking the investigation based upon the information it had received, irrespective of whether the complaints themselves were initially based upon the hearsay information supplied by Dr. K's wife, when that information, for all intents and purposes, was validated by appellant.

We therefore hold that patient A's constitutional right to privacy in her medical records pertaining to her treatment by Dr. K is outweighed by the State's compelling interest in obtaining those records for the purpose of investigating possible disciplinary action against Dr. K.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**