PATIENTS OF DR. Barbara SOLOMON

v.

BOARD OF PHYSICIAN QUALITY ASSURANCE and Maryland Department of Health and Mental Hygiene.

No. L–99–3787.

United States District Court, D. Maryland.

Dec. 23, 1999.

---

7. The letter provides, in pertinent part: "My clients note that such items as rice and coffee are being sold from the store. This seems to violate the letter and spirit of the prohibition. I would like to hear your thoughts on this." Def.'s Statement of Facts, Exhibit 17.

**546**

William H. Klumpp, Jr., Fallston, Maryland, Mercedes C. Samborsky, Joppatowne, MD, for Petitioners.

Honorable J. Joseph Curran, Jr., Attorney General of Maryland, Thomas W.

Keech, Asst. Atty. Gen., Baltimore, MD, for Respondents.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

This case is before the Court on a Petition for Temporary Restraining Order/Preliminary Injunction filed by unidentified patients of Dr. Barbara Solomon ["Patients"]. The Patients request that the Court temporarily enjoin the Board of Physician Quality Assurance ["Board"] and the Maryland State Department of Health and Mental Hygiene ["DHMH"] from seizing medical records from Dr. Solomon until there is "a full and fair hearing" with regard to their privacy rights.

The Board originally issued a subpoena duces tecum to Dr. Solomon requesting production of her complete appointment schedule for October through December 1998. Dr. Solomon sought to quash the Board's subpoena in the Circuit Court for Baltimore County. Her motion was denied, and the case is currently on appeal in the Court of Special Appeals of Maryland.[1]

On December 2, 1999, the Board sent another subpoena duces tecum for "the entire medical chart, including, but not limited to, the billing records" of nineteen patients from Dr. Solomon's appointment logs. The subpoena stated further that the records would be due within twenty-one business days and failure to obey would result in sanctions. The Patients filed their Petition in this Court on December 20, 1999.

### II. Discussion

■ A district court considers four factors in determining whether to grant injunctive relief in a given case: (1) the likelihood of irreparable harm to the plaintiff; (2) the likelihood of harm to the de-

**1.** *Solomon v. Board of Physician Quality Assurance,* 03–C–99–002368 (Cir.Ct.Balt.Co.), on appeal to the Court of Special Appeals, No. 01481.

fendant; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *See Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manuf. Co.*, 550 F.2d 189, 194 (4th Cir.1977). The Court should first balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant. *See id.* at 195. If the balance of hardship weighs in favor of the plaintiff, the likelihood-of-success test is displaced. *See id.* at 195–96. If the balance of hardship between the parties is not substantially different, however, then "the probability of success begins to assume real significance." *Id.* at 195 n. 3.

Here, it is clear that denying the Petition would harm the Patients by allowing their medical records to be transmitted to the Board. Likewise, granting the Petition would prejudice the Board and stymie its investigation of Dr. Solomon. Because the balance of hardship is fairly even, the Court will look more closely at the third and fourth factors of the *Blackwelder* test.

▆▆▆ The Court finds first that the Patients' likelihood of succeeding on the merits is low. The Supreme Court has recognized an individual privacy interest in "avoiding disclosure of private matters." *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Although some medical records surely fall within this realm, it is also true that "[r]equiring such disclosures to representatives of the State having responsibility for the health of the community [ ] does not automatically amount to an impermissible invasion of privacy." *Id.* at 602, 97 S.Ct. 869. Instead, courts permit intrusion into the zone of privacy surrounding medical records where the societal interest in disclosure outweighs the individual's privacy interest. *See Ferguson v. City of Charleston*, 186 F.3d 469, 482 (4th Cir. 1999). This balancing test requires consideration of the following factors: the type of record requested; the information it does or might contain; the potential for harm in a subsequent non-consensual disclosure; the injury from disclosure to the relationship in which the record was generated; the adequacy of safeguards to prevent unauthorized disclosure; the necessity of access; and whether there is a statutory mandate or other recognizable public interest in favor of disclosure. *See United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir.1980).

In the context of disciplinary proceedings, the Maryland Court of Special Appeals has held that a patient's right to privacy does not bar disclosure of health records when the patient asserts the right after his physician has been subpoenaed to produce those records. *Dr. K. v. State Board of Physician Quality Assurance*, 98 Md.App. 103, 632 A.2d 453, 462 (1993). In *Dr. K.*, the Board issued a subpoena—much like the subpoena in the present case—requiring the physician under investigation to provide "any and all medical records." *See id.* at 459. The physician responded by filing a Motion to Quash in Circuit Court. *See id.* at 454. After the Motion was denied, the physician appealed. *See id.* The Court of Special Appeals weighed the *Westinghouse* factors listed above and concluded that the balance favored disclosure. Specifically, the court found that Maryland statutes provide an adequate safeguard against unauthorized disclosure, and the Board's mission necessitates access to records generated in a physician's practice. *See id.* at 460–61. The court also noted that the Board operates pursuant to an express statutory mandate and the State has a significant interest in protecting the public health by regulating the practice of medicine. *See id.* at 461. In concluding, the court averred that a contrary finding would give patients a "veto" over the Board's power to investigate, would "eviscerate the Board's ability to protect the larger public interest," and would allow unscrupulous doctors to convince their patients to halt investigations by asserting a privacy interest in their medical records. *See id.* at 462.

Although *Dr. K.* is not binding on this Court, it is clearly in line with relevant federal case law. In *Schachter v. Whalen,* 581 F.2d 35 (2d Cir.1978), for example, the Second Circuit held that the New York State Board for Professional Medical Conduct did not infringe patients' constitutional rights when the Board subpoenaed medical records in the course of a disciplinary investigation. *See also In re Search Warrant (Sealed),* 810 F.2d 67, 71–73 (3d Cir. 1987) (holding that state's interest in investigating physician for health care fraud outweighed patients' privacy interest in medical records).

Although the Fourth Circuit has not ruled on whether a patient has a constitutional interest in the non-disclosure of medical records, *see Ferguson,* 186 F.3d at 483, the case law indicates that it would most likely follow *Dr. K.* and *Schachter.* For example, *Ferguson* addressed a privacy challenge to a state hospital policy requiring urine tests for pregnant women suspected of cocaine use, and subsequent reporting of test results to law enforcement officials. *See* 186 F.3d at 474. Positive results would often lead to the mother's arrest for distributing cocaine to a minor. *See id.* Ten women subjected to the policy brought suit, claiming that the policy violated their privacy rights. *See id.* at 475. The Fourth Circuit, assuming *arguendo* that there is a constitutional right to privacy in medical records, held that the right was not violated in these circumstances. *Id.* at 483. The court noted that the State "has a compelling interest in the identification of law breakers and in deterring future misconduct." *Id.* Further, the information was disseminated to only a limited number of law enforcement personnel and was not made available to the public. *Id.*

Given the Board's mission of identifying physicians who engage in immoral or unprofessional conduct, and the Board's goal of preventing future misconduct, courts in this Circuit would most likely find that the Board's activity furthers a compelling state interest. Moreover, because Maryland's statutory restrictions against disclosure of medical records are adequate to protect the Patients from widespread disclosure, courts in this Circuit would most likely find no constitutional violation.

Denial of the Petition is also supported by the public interest. It is beyond doubt that society has a deep interest in ensuring, through its government agencies, that practicing physicians meet moral and professional standards. Investigations are necessary and may involve the subpoenas of medical records. As the court noted in *Dr. K.,* allowing individual patients to block Board investigations—as the Patients seek to do here—would hinder the Board's ability to protect public health. *See* 632 A.2d at 462.

### III. Conclusion

Given that the public interest in the current investigation outweighs the limited privacy interests of the Patients, and considering their low likelihood of success on the merits, the Court will deny the Patients' Petition for a Temporary Restraining Order/Preliminary Injunction.

### *ORDER*

In accordance with the attached Memorandum, it is this ___ day of December 1999, by the United States District Court for the District of Maryland, ORDERED:

1. That Petitioners' Petition for Temporary Restraining Order/Preliminary Injunction BE, and the same IS, hereby DENIED; and

2. That copies of this Memorandum and Order be mailed to counsel for the parties.