693 A.2d 394

**William S. WARNER**

v.

**Brad D. LERNER.**

**No. 1368, Sept.Term, 1996.**

Court of Special Appeals of Maryland.

May 7, 1997.

Marvin Ellin (Michael P. Smith and Ellin and Baker, on the brief), Baltimore, for Appellant.

E. Dale Adkins, III (Gregory L. VanGeison and Anderson Coe & King, L.L.P., on the brief), Baltimore, for Appellee.

Argued before HOLLANDER, EYLER and THIEME, JJ.

THIEME, Judge.

This is an appeal from an order of the Circuit Court for Baltimore City (Mitchell, J.) dismissing appellant's claim that his rights under Maryland's Confidentiality of Records Act were violated by appellee. We shall affirm the circuit court.

### Facts

In a claim unrelated to this appeal, Leo Kelly, Jr., brought an action alleging medical malpractice on the part of appellee, Dr. Brad Lerner. Upon the parties' joint consent to submit the claim to binding arbitration, the matter proceeded in that fashion.

Plaintiff's expert, Dr. Horst Schirmer, opined that Dr. Brad Lerner breached standards of care by performing on Kelly an operation known as a transurethral resection of the prostate ("TURP"). On cross-examination, Lerner's counsel sought to impeach Schirmer by introducing a copy of a pathology report

that indicated that Dr. Schirmer had performed the same kind of surgery under conditions nearly identical to those that he alleged constituted a breach of care on the part of Lerner. The subject of that pathology report was appellant William Warner.

Warner filed a complaint in the Circuit Court for Baltimore City alleging that a violation of the Confidentiality of Records. Act, as set forth in Maryland Code Ann., Health General Article § 3–401 *et seq.* ("the Act"), had resulted from Lerner's improper taking and using Warner's medical records without his prior consent.

Lerner filed a motion to dismiss. In his ruling from the bench, Judge Mitchell stated:

> We are troubled here, as we intimated by our questions, that in this society, where so much of our interests, our knowledge, [and] our records are subject to review without our being aware of it, that an uninterested person, clothed only with the mantle of a Doctor of Medicine degree or licensure, can rummage through the records of a hospital and obtain information about patients.

> We are troubled that no effort was made to subpoena the records and give notice to the patient that his records were being made public. We are troubled that the individual patient did not have free opportunity to contest the disclosure of his records and that a court of competent jurisdiction was not afforded an opportunity to consider the issue and perhaps craft a protective order.

> . . . . .

> The statute provides that *any* provider may obtain *any* *record* of *any* patient if those records will assist in the defense of a lawsuit against that health care provider. We obviously are paraphrasing.

> Despite this Court's quite obvious discomfort, maybe even displeasure, or its severe reservations regarding just what was intended by the general assembly, the language of the statute is clear, and we must give meaning to those words as those words were set forth by that deliberative body.

We will grant the motion to dismiss this case, because the legislature, by their language, gave the defendant the opportunity to obtain this information and use it to defend a lawsuit that everyone acknowledges was pending against him.

. . . . .

We hope, and in fact urge, that the legislature reexamine this issue because of the potential for abuse.

(Emphasis supplied.)

Appellant presents the following issue, as paraphrased, for this Court's review:

Whether Lerner's taking and disclosure of Warner's medical records was permitted under the Act.

## DISCUSSION

### I. Standard of Review

Upon appeal from the granting of a motion to dismiss filed under Maryland Rule 2–322(b)(2), an appellate court must assume the truth of all well-pleaded relevant and material facts in the complaint, as well as all inferences that can reasonably be drawn therefrom. *Odyniec v. Schneider,* 322 Md. 520, 525, 588 A.2d 786 (1991). Dismissal is proper only if the alleged facts and permissible inferences, so viewed, would nonetheless fail to afford relief to the plaintiff if proven. *Morris v. Osmose Wood Preserving,* 340 Md. 519, 531, 667 A.2d 624 (1995); *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993).

### II. The Act

The genesis of the Act occurred during the 1990 session of the General Assembly as Senate Bill 584. Sponsored by five senators, particularly Senator Paula Hollinger, chair of the health subcommittee, SB 584 was enacted to provide for the confidentiality of medical records, to establish clear and certain rules for the disclosure of medical records, and generally to bolster the privacy rights of patients. The legislature

recognized that, because of the personal and sensitive nature of one's medical records, a patient might experience emotional and financial harm if his medical records are improperly used or disclosed. It was further desired that the Act would enable health care providers to retain the full trust and confidence of their patients.

The resultant codification of this legislative initiative now reads, in pertinent part:

**§ 4–305 Disclosures without authorization of person in interest—In general.**

(b) *Permitted Disclosure.*—A health care provider may disclose a medical record without the authorization of a person in interest:[1]

(1)(ii) To the provider's legal counsel regarding only the information in the medical records that relates to the subject matter of the representation; or

(iii) To **any** provider's insurer or legal counsel, or the authorized employees or agents of a provider's insurer or legal counsel, or the authorized employees or agents of a provider's insurer or legal counsel, for the sole purpose of handling a potential or actual **claim against any provider.** (Emphasis supplied.)

The Floor Report of SB 584 further summarizes the circumstances under which a permissive disclosure of a patient's medical records is available. "These persons and entities include: 1) a provider's authorized employees, agents, or consultants for the purpose of offering, providing, evaluating, or seeking payment for health care to patients; 2) a provider's legal counsel...." While it is clear the first item generally relates to medical treatment, and the payment therefor, the second item can be construed quite broadly as allowing a

---

**1.** Section 4–301 provides that a health care provider is one who is licensed, certified, or otherwise authorized under the Health Occupations Article to provide health care in the ordinary course of business, and that a person in interest includes an adult on whom a health care provider maintains a medical record.

provider's legal counsel to have wholesale access to medical records in the defense of a pending claim.

This is the focus of our concern. Although the Act attempts to fortify the privacy interests and rights of patients, it lacks clarity as to the precise circumstances under which a provider's attorney may obtain medical records. Consequently, two particular purposes of the Act, namely, bolstering confidentiality and developing regulations under which the records may be disclosed without prior consent of the patient, are summarily eviscerated by the language of the statute. While we surmise that the drafters may have intended that the terms of discretionary disclosure should be applicable to a legal action in which the patient has a direct interest, and that the basis of this action accrued within the scope of the subject provider's practice, this intent stands in diametric opposition to the actual language used in the Act. Nonetheless, we must accept the law as it is written, not as we would like it to be. *Department of Economic and Employment Development v. Taylor,* 108 Md.App. 250, 277, 671 A.2d 523 (1996), *aff'd,* 344 Md. 687, 690 A.2d 508 (1997) (per curiam); *McCance v. Lindau,* 63 Md.App. 504, 512, 492 A.2d 1352 (1985) (citing *R. v. Ramsey,* 1 C & E. 126, 136 (1883)).

Moreover, we must presume that the legislature, by its words and deeds, intended that which it has promulgated, and that we are not to substitute, embellish, or otherwise alter its intent. *Taylor v. Mayor and City Council of Baltimore,* 51 Md.App. 435, 447, 443 A.2d 657 (1982).

By applying the plain language of the statute, and disregarding the potential problems associated therewith, as discussed *infra,* it is patent that the language of § 4–305(b)(1)(iii) permitted Lerner, through his counsel, to obtain Warner's medical records without his prior consent or authorization. As troubling as this may be, it is the result of interpreting the statute in terms of the "plain English" meaning that case law requires. Therefore, we hold that the trial court properly dismissed Warner's claim under the Act and, accordingly, affirm the judgment below.

### III. Potential Constitutional Implications

■ The question presented in the instant appeal, calling for judicial insight as to the propriety of the disclosure of Warner's medical records under the Act, *could* provide a narrow constitutional basis for resolution that *might* require us to determine whether the portion of the statute upon which Warner's claim is predicated, and upon which Lerner's professed authority to acquire Warner's medical records is based, is constitutional. But for the lack of any state action in this regard, we might well be able to address the statute accordingly.

One seeking to assert a violation of the protections of procedural due process must demonstrate that the "depriving mechanism" employs state action to facilitate the deprivation of a property interest of the challenger. *Fuentes v. Shevin*, 407 U.S. 67, 84–85, 92 S.Ct. 1983, 1996–97, 32 L.Ed.2d 556 (1972); *Golden Sands Club Condominium, Inc. v. Waller*, 313 Md. 484, 488 n. 4, 545 A.2d 1332 (1988); *Department of Transportation, Motor Vehicle Admin. v. Armacost*, 299 Md. 392, 416, 474 A.2d 191 (1984); *Roberts v. Total Health Care, Inc.*, 109 Md.App. 635, 644, 675 A.2d 995 (1996), *cert. granted*, 343 Md. 566, 683 A.2d 178 (1996); *Vavasori v. Commission of Human Relations*, 65 Md.App. 237, 243, 500 A.2d 307 (1985), *cert. denied*, 305 Md. 419, 504 A.2d 1152 (1986). Upon the satisfaction of the predicate state action requirement, a reviewing court must then invoke a second tier of scrutiny, the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 332–35, 96 S.Ct. 893, 901–03, 47 L.Ed.2d 18 (1976), to establish what procedural due process, if any, is constitutionally required. *Roberts*, 109 Md.App. at 644, 675 A.2d 995.

The instant appeal involves, essentially, a common law action by a private citizen for invasion of his privacy by another private citizen. At no point during the course of events that gave rise to the inception of litigation was the State involved. Thus, this Court cannot properly reach a constitutional analysis of the statute upon which Warner's claim is based.

Clearly, however, Warner's medical records, documents in which he has a legitimate expectation of privacy, were published without his consent, without notice, or even an opportunity to be heard in opposition to the intended disclosure. Not until after the underlying arbitration did Warner learn of the dissemination through conversation with his treating physician.

In *Dr. K. v. State Bd. of Physician Quality Assurance*, 98 Md.App. 103, 632 A.2d 453 (1993), Judge Cathell, writing for this Court, opined that one's right to privacy in his medical records falls within the ambit of constitutional protection. *Id.* at 112, 632 A.2d 453. *Dr. K.* involved a State investigative board's attempts to obtain a patient's medical records subsequent to allegations that Dr. K. committed misconduct with that particular patient. We reasoned that the State's compelling interest of investigation and, presumably, the contemporaneous safeguarding of public welfare, ultimately outweighed the privacy interests of both Dr. K. and his patient. That conclusion in no way diminished the constitutional right to privacy of one's medical records. *Dr. K.* is distinguishable from the instant case. Here it is not a state actor who seeks to disclose confidential medical records in furtherance of societal interest, but rather a private individual, motivated by self-serving desires to defend a lawsuit that is pending against him, used the records.

## A. Privacy

*Whalen v. Roe*, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), involved a New York statute that required physicians to submit to the state copies of all prescriptions written for all schedule II narcotic prescriptions. The state archived the records, attempting to promote community health and discourage abusive prescribing and consuming practices. After considering the measures employed by the state to protect the data, the Supreme Court held the statute to be constitutional and seemingly indicated that the state's public welfare interests outweighed the patient's interest in confidentiality.

The instant case is wholly distinguishable from *Whalen* inasmuch as the disclosure of Warner's medical records in no way furthered state interests, but fulfilled the individual needs of Lerner in his defense of a malpractice claim by Kelly that was then pending. Moreover, it can be said that the New York patients who objected to their personal data being turned over to the state had knowledge that this ongoing practice was in effect as prescribed by law.

The Supreme Court of Iowa, conversely, in *Iowa Civil Rights Commission v. City of Des Moines,* 313 N.W.2d 491 (1981), a case almost identical to the one now before this Court (but for the instant lack of state action), addressed the issue of whether non-parties to an action have the right to notice of the intended use of their medical records in that action. James Washington, a garbage collector for the city, sustained a knee injury during the course of his employment. Subsequent to his completion of disability leave (and an intervening contractual cessation and commencement of trash collection by the city), Washington reapplied for his position, but was denied employment. Washington filed a complaint, contending that a white employee was rehired under identical circumstances.

During the investigation, the Commission issued a subpoena *duces tecum* to the city for the production of medical records of 73 current and former trash collectors. The city refused disclosure on grounds that the records were confidential under Iowa law. Citing the right of the individuals whose records were sought to be present, a protective order was issued by the trial court.

On interlocutory appeal, the Iowa court affirmed the trial court's order because "persons whose medical records were sought were not parties to the enforcement action and had no opportunity to invoke" their right to confidentiality. *Des Moines,* 313 N.W.2d at 497. It was, therefore, quite clearly intimated that those patients had not only a right to notice of the intended use of their records, but also a right to be heard in opposition to the disclosure of their records.

## B. Application

The language of subsection (b), permitted disclosures, ecumenically states that a health care provider *may* disclose a patient's records without his authorization. In light of our earlier discussion of one's inherent privacy interest in his own medical records, we take issue with a wholly non-judicial or administrative entity being vested with discretion to make decisions of this magnitude. The Court of Appeals has consistently stated that courts are prohibited from performing non-judicial functions and, conversely, non-judicial entities are prohibited from performing judicial functions. *See Shell Oil Co. v. Supervisor of Assessments of Prince George's County,* 276 Md. 36, 46, 343 A.2d 521 (1975) (prohibiting administrative agencies from performing judicial functions); *Board of Supervisors v. Todd,* 97 Md. 247, 264, 54 A. 963 (1903) (holding that courts must only perform duties judicial in nature).

A major premise upon which the Act is based is the need for the establishment and implementation of procedures to govern the disclosure of confidential medical records, particularly in situations when the patient's consent need not be obtained. Granting a health care provider unbridled discretion to disclose a confidential record is not only completely at odds with the legislative intent of the Act, but also repugnant. Practically speaking, the custodian of records for a health care provider is often times a "mechanized" employee with little or no investigatory insight or legal knowledge. It is unlikely that such an individual, having received a request for medical records, would contact legal counsel of the provider, or otherwise attempt to ascertain the relevance and authenticity of the request. Moreover, no substantive or procedural requirements currently assist in determining whether or not a given disclosure should be made. The end result of this activity is the arbitrary application and implementation of the Act.

The disclosure of medical records in this context rapidly approaches a judicial level, as the production of medical records quite frequently results in a request for a protective order, whose adjudication requires judicial determination to

balance the need for disclosure against the need for confidentiality. This function is essentially bypassed or usurped by permitting discretionary disclosure by a custodian of records.

Further, § 4–309 sets forth criminal and civil penalties for violations of the Act, particularly, the refusal to disclose records. Given the discretionary nature of subsection (b), these punitive measures are essentially unenforceable and useless.

Indeed, given the subjective nature of human beings and the quantity of requests for records, hopes for uniformity in application of this policy are but wishful thinking. To bring this blueprint into reality requires uniform measures in administering disclosure of records. Perhaps an administrative sub-agency might serve effectively as a clearinghouse for such requests. This resolution, however, is a chore for another day, and for another branch of our government. *See Giles & Ransome, Inc. v. First Nat. Realty Corp.*, 238 Md. 203, 208 A.2d 582 (1965).

Turning next to subsection (1)(iii) of the statute, we initially notice the all-encompassing characteristic of the word "any." Even if we remind ourselves that any interpretation ought to be guided by logic, reason, and common sense, there nonetheless exists a plethora of possibilities for the application of this word in this context.

As previously mentioned, the motions judge, in his ruling from the bench, paraphrased his interpretation of this portion of the Act, and stated:

The statute provides that *any* provider may obtain *any* *record* of *any* patient if those records will assist in the defense of *a* lawsuit against that health care provider. (Emphasis supplied.)

This Court's reading and resultant interpretation of the statute leads us to a substantially similar result.

This specific portion of the present language and construction employed by the legislature in the creation of this statute is dangerously overbroad. Before discussing the rationale for

this finding, an additional term must be discussed in a constitutional context.

Subsection (1)(iii) also strives to delineate the circumstances under which disclosure is discretionary, and in so doing, indicates that the handling of an actual or potential *claim* of a provider is such an occasion. Unfortunately, no precise meaning of this term, as applied in this instance, is given in either the definitional section, or elsewhere in the statute.[2] Additionally, the plain meaning of the term affords us no clarifying insight. Though a requirement of relevance to the claim is provided by (ii), this fails to render any additional illumination as to the meaning of "claim," but, at best, suggests the need for redaction of surplusage within the record.

As a final effort to ascertain the intent of the legislature as to when disclosure is permitted, the Act's history must be consulted. Once again, this venture is to no avail, inasmuch as the purpose of the Act mentions no specific, or even general, type of claim or action in which medical records might be disclosed, but, rather, solely suggests "relevan[ce] to the purpose for which disclosure is sought...." Preamble to Senate Bill 584.

We are therefore of the position that the legislature's use of the term "claim" in this subsection of the Act is vague. The revelation of several possible scenarios incorporating both the vagueness and overbreadth of the respective portions of the statute further supplements and illustrates our position.

Imagine a situation in which a husband and wife, both physicians, are involved in a divorce action. The medical practice of "spouse A" involves large amounts of time being spent on research and treatment of HIV positive intravenous drug addicts in violent high crime areas. Under the current provisions of the Act, "spouse B," who seeks to obtain custody of a minor child, could obtain the medical records of spouse

---

2. Although § 4–305(b)(1)(iii) discusses the filing of a "claim," this solely entails payment for medical services in the context of a third party payor.

A's patients, perhaps to call into question the suitability of the environment in which the child might well spend time.[3]

This example, though perhaps fatuous, is well within the ambit of the Act. A divorce action is most clearly a "claim," and because both spouses fall within the category of "any" health care provider, the medical records could be disclosed as apparently relevant to the custody of a minor child.

Next, envision a situation in which a licensed acupuncturist sues in tort for defamation. As part of discovery, defendant hires a private investigator, who makes observations and files a report wherein the observations are recorded, noting the date and time of each one. The acupuncturist's counsel conducts a "fishing expedition" and obtains the medical records of the investigator's aged mother. Noting that the mother's record indicated that the son accompanied the patient home from an outpatient surgical procedure at the date and time of an alleged observation in the report, he seeks to impeach the investigator on this basis. While this may serve as valuable impeachment evidence, no logical correlation between the defamation action and the disclosure of the medical record exists.

Once again, this is plausible under the Act. Here, the health care provider seeks disclosure of a medical record so that his counsel may "handle" an actual or potential claim. It is irrelevant that the patient has not even a remote involvement with the pending litigation. Absent limitation or specificity, the Act permits disclosure of the mother's medical record because she falls into the category of "any" person in interest, *i.e.*, a patient.

The facts of the case *sub judice* provide an equally plausible, although perhaps less colorful, unintended application of this subsection of the Act. In the underlying malpractice action, Lerner sought to impeach the testimony of Kelly's expert by eliciting the fact that although Schirmer criticized

---

**3.** Note, however, the provisions of 42 C.F.R. § 2.61 (generally prohibiting the disclosure of drug treatment records without a court order).

Lerner for performing a TURP when he did, Schirmer acted in a like manner under like circumstances. Purportedly under color of the Act, Lerner, or his counsel, obtained Warner's medical records for this purpose, although Warner was in no way involved in the arbitration proceeding. The nature of the surgery performed on Warner was arguably personal and sensitive in nature. Many would experience unnecessary embarrassment on this basis.

We are duty bound to interpret an unambiguous law as it is written—even if the result is not what our conscience tells us it should be. *Brzowski v. Maryland Home Improvement Commission*, 114 Md.App. 615, 627, 691 A.2d 699 (1997). Judge Mitchell, in his ruling from the bench, said it best:

We will grant the motion to dismiss this case, because the legislature, by their language, gave the defendant the opportunity to obtain this information and use it to defend a lawsuit that everyone acknowledges was pending against him.

· · · · ·

We hope, and in fact urge, that the legislature reexamine this issue because of the potential for abuse.

**JUDGMENT AFFIRMED. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**