705 A.2d 1169

**William S. WARNER**

v.

**Brad D. LERNER.**

**No. 69, Sept. Term, 1997.**

Court of Appeals of Maryland.

Feb. 19, 1998.

Marvin Ellin (Michael P. Smith, Ellin and Baker, on brief), Baltimore, for Petitioner.

E. Dale Adkins, III (Gregory L. Van Geison, Anderson, Coe & King, L.L.P., on brief), Baltimore, for Appellee.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., MARVIN H. SMITH, Judge (retired), Specially Assigned, and DALE R. CATHELL, Judge (Specially Assigned).

WILNER, Judge.

We are called upon in this appeal to construe certain provisions of the Maryland Confidentiality of Medical Records Act, codified, in relevant part, as Maryland Code (1982 Repl. Vol., 1997 Supp.), §§ 4–301 through 4–309 of the Health–General Article.[1] Petitioner, William Warner, claims that respondent, Brad Lerner, violated his rights under the Act by obtaining one of his medical records from Union Memorial Hospital in a manner and for a purpose not allowed by the Act. The Circuit Court for Baltimore City, by granting Ler-

---

1. All future statutory references will be to the Health–General Article.

ner's motion to dismiss, found that Lerner's conduct did not constitute a violation of the Act, and, in a reported opinion, the Court of Special Appeals affirmed that judgment. *Warner v. Lerner*, 115 Md.App. 428, 693 A.2d 394 (1997). We shall reverse.

## FACTUAL BACKGROUND

██ Because the issue before us arises from the granting of a motion to dismiss the complaint, we must assume as fact the well-pleaded material allegations in the complaint and any reasonable inferences that may be drawn from them. *Flaherty v. Weinberg*, 303 Md. 116, 135–36, 492 A.2d 618, 628 (1985). We must look, then, to what is alleged in the complaint.

Warner was a patient of Dr. Horst Schirmer, a urologist. He was treated by Dr. Schirmer for urinary/genito problems in 1992 and, in the course of that treatment, disclosed personal information to Dr. Schirmer with the understanding that the information was confidential. By necessary implication, though not by express averment, it appears that medical records concerning Warner and the treatment by Dr. Schirmer became part of the medical records of Union Memorial Hospital.

Lerner is also a urologist having privileges at Union Memorial Hospital. In 1993, Leo Kelly, a patient of both Lerner and Schirmer, sued Lerner for malpractice. By agreement, Lerner and Kelly submitted their dispute to retired Judge Hilary Caplan, as a "binding mediator." [2] Dr. Schirmer had

---

2. It appears from other parts of the record that, in reality, Judge Caplan was acting as an arbitrator, not as a mediator. An affidavit from Lerner's attorney states that "[t]he action was submitted to binding arbitration pursuant to an agreement of the parties." Attached to the affidavit is a letter from Kelly's lawyer confirming an agreement "to submit to binding arbitration of this matter before Judge Hilary Caplan." The circuit court, in this case, found that the proceeding before Judge Caplan was an arbitration. Apart from all of that, we are unaware of anyone having the authority to act as a "binding mediator." Mediation is a conciliatory process in which a mediator assists the parties in reaching their own solution or agreement. A mediator has no authority to impose a solution or adjudicate the dispute. Even in a

been retained as an expert witness by Mr. Kelly, and he was called to testify before Judge Caplan. The complaint alleges:

> "11. In an effort to discredit Dr. Schirmer's testimony, the Defendant Lerner wrongfully, willfully and in violation of [§ 4–302] obtained the Plaintiff William S. Warner's urological record from the medical records of Union Memorial Hospital and furnished this wrongfully obtained confidential data to his attorney....
>
> 12. Cross-examination of Dr. Schirmer included public disclosure of the Plaintiff's past urological history and treatment and made public confidential data, which the Plaintiff never authorized and would not have authorized, as it contains intimate and personal information regarding his urological status.
>
> . . .
>
> 14. The Plaintiff alleges that the violation of the Maryland Statute by the Defendant Lerner was a willful and intentional act as was the disclosure of such data at a public hearing and/or to third persons not authorized by the Plaintiff."

Lerner moved to dismiss the complaint on the grounds that (1) the complaint failed to show a violation of the statute, (2) the disclosure was permissible under §§ 4–305 and 4–309, and (3) the disclosure during the arbitration proceeding was, in any event, absolutely privileged. In a memorandum in support of that motion, Lerner acknowledged that "[i]n preparation for the arbitration of the *Kelly* case, the defendant and his lawyer obtained a copy of a pathology report from an operation performed by Dr. Schirmer to demonstrate that Dr.

---

court-annexed program, where the parties may be required by a court to submit to mediation, they are not required to reach an agreement and the mediator has no authority to bind them to one. Occasionally, a neutral person will be asked to attempt first to mediate a dispute and, failing that, to adjudicate it—a process sometimes referred to as "med/arb"—but, in such a proceeding, the neutral party will necessarily be acting as an arbitrator, not as a mediator, when making the adjudication. It is important that these very different processes not become confused.

Schirmer's testimony was untrue. The pathology report obtained was Mr. Warner's."

The complaint does not allege precisely how Lerner obtained the pathology report from Union Memorial's records. It seems implicit from the argument made both in the circuit court and in this Court that, rather than physically rummaging through the actual records, Lerner obtained the report through the Union Memorial Hospital computer system. From the allegation that he obtained the report "wrongfully" and "in violation of the above statute," it is also implicitly alleged that he obtained it without requesting or receiving permission from Union Memorial, from Dr. Schirmer, or from Mr. Warner.

Although, as noted, three grounds were raised in Lerner's motion to dismiss, the court acted on the basis of only one of them. It concluded that Lerner's obtention and disclosure of the report was authorized under § 4–305(b)(1)(iii), permitting a health care provider to disclose a medical record without the authorization of a person in interest (which includes the patient to whom the record pertains) "[t]o any provider's insurer or legal counsel . . . for the sole purpose of handling a potential or actual claim against any provider." That section, the court reasoned, "gave the defendant the opportunity to obtain this information and use it to defend a lawsuit that everyone acknowledges was pending against him." The court expressed its concern that "no effort was made to subpoena the records and give notice to the patient that his records were being made public" and as well that Mr. Warner "did not have free opportunity to contest the disclosure of his records and that a court of competent jurisdiction was not afforded an opportunity to consider the issue and perhaps craft a protective order." It felt bound, however, by its view of the law allowing "any provider" to obtain "any record" of "any patient" to defend a malpractice suit against the provider.

The Court of Special Appeals articulated similar concerns, but nonetheless agreed with the circuit court's interpretation of § 4–305(b)(1)(iii) as permitting "Lerner, through his coun-

sel, to obtain Warner's medical records without his prior consent or authorization." *Warner v. Lerner, supra,* 115 Md.App. at 433, 693 A.2d at 396.

## DISCUSSION

Section 3–301 defines certain terms for purposes of the Act. It is undisputed that, under those definitions, Union Memorial Hospital and Lerner are health care providers, Warner is a patient and person in interest, and the pathology report admittedly obtained by Lerner is a medical record pertaining to Warner. Section 4–302(a) states, in general, that a health care provider shall (1) keep the medical record of a patient confidential, and (2) disclose the medical record only as provided by law. Subsection (b) exempts certain kinds of information from the ambit of the Act, but neither party suggests that any of those exemptions apply to the record at issue here. Section 4–303 requires a health care provider to disclose a medical record on the authorization of a person in interest, subject to conditions stated in that section. It is undisputed, at this point, that neither Lerner nor Union Memorial had the authorization of a person in interest to have the pathology report disclosed (1) to Lerner, or (2) by Lerner to his attorney.

Section 4–306 *requires* a health care provider to disclose a medical record, without authorization of a person in interest, in six enumerated circumstances, none of which apply here. One provision of § 4–306 that is relevant, by way of contrast, is subsection (a)(3), requiring the disclosure "[t]o a health care provider or the provider's insurer or legal counsel, [of] all information in a medical record relating to a patient or recipient's health, health care, or treatment which forms the basis for the issues of a claim in a civil action *initiated by the patient, recipient, or person in interest.*" (Emphasis added.) Had Mr. Warner been the claimant and had the pathology report been pertinent to that claim, the hospital, upon request, may have been obliged to disclose the report. That, of course, was not the case; Mr. Warner had made no claim against

anyone, least of all a health care provider. Section 4–306(a)(6) requires the disclosure of a medical record "[i]n accordance with compulsory process, a stipulation by a patient or person in interest, or a discovery request permitted by law to be made to a court, an administrative tribunal, or a party to a civil court, administrative, or health claims arbitration proceeding." As noted by the circuit court, the pathology report was not obtained or disclosed pursuant to any of those processes.

We turn, then, to § 4–305, which, in contrast to § 4–306, is a *permissive* disclosure provision. Indeed, § 4–305(a) expressly provides that "[t]his section may not be construed to impose an obligation on a health care provider to disclose a medical record." Subsection (b) then lists nine circumstances under which a health care provider "*may* disclose a medical record without the authorization of a person in interest." (Emphasis added.) One of those circumstances, § 4–305(b)(1)(iii) is "[t]o any provider's insurer or legal counsel, or the authorized employees or agents of a provider's insurer or legal counsel, for the sole purpose of handling a potential or actual claim against any provider." That is the provision that was declared applicable by the two lower courts. They each focused on the general adjective "any" as allowing disclosure to Lerner's attorney, as the legal counsel for "any provider."

■ The fundamental flaw in that approach is that, under the alleged facts of this case, it matters not whether the word "any" is given an expansive or restrictive meaning, for § 4–305(b) itself has no application. That section deals with when a health care provider in possession of medical records is allowed, *in its discretion,* to disclose them without the authorization of the patient. The health care provider in question was Union Memorial Hospital, not Lerner. The pathology report was in the possession of the hospital, not Lerner. Accordingly, even if the lower courts' reading of § 4–305(b)(1)(iii) were correct, that provision would do no more than authorize Union Memorial Hospital to disclose the rec-

ords to Lerner's attorney.[3] Apart from the omission of the provision to allow disclosure to Lerner himself, the telling fact overlooked below is that, by obtaining the report entirely on his own, Lerner never allowed Union Memorial to exercise its discretion.

As noted, in contrast to § 4–306, even under the expansive reading given by the lower courts, Union Memorial was not *required* to disclose Mr. Warner's records to Lerner's attorney, but would merely have been *permitted* to do so. Under the circumstances of this case, it may well have opted not to disclose, at least without first consulting Mr. Warner or Dr. Schirmer. It may have elected to disclose some parts of the record but not others. It may have insisted on a subpoena. It may have put other conditions on a disclosure. As a result of Lerner's alleged self-help approach, the hospital never had an opportunity to do any of those things. We find nothing in § 4–305(b)(1)(iii), or any other provision of § 4–305, authorizing Lerner, who, notwithstanding his possible status as a provider nonetheless was a complete stranger to Warner, to have access and to obtain Warner's medical records without the consent of Union Memorial.

 That brings us to § 4–309, subsection (b) of which makes it a violation of the subtitle for a health care provider or any other person to obtain a medical record under false

---

**3.** It is noteworthy that § 4–305(b)(1)(iii), while authorizing disclosure to "any provider's insurer or legal counsel," does not authorize disclosure to the provider. That may well be an indication that the provision was intended to be restricted to the situation in which the possessor of the medical records, or perhaps an employee or agent of that possessor, is the provider being sued, for only in that setting would the "provider" have no need to have the records disclosed to it. The possessor and its employees and agents would already have access to the records; the need, in that setting, would only be to enable the provider to disclose the records to their insurers or attorneys. When the provider being sued is someone else, not having legitimate access to the medical records, it would seem anomalous to permit disclosure to the provider's insurer or attorneys but not to the provider. For the reasons noted, we need not decide in this case whether § 4–305(b)(1)(iii) should be read to permit Union Memorial Hospital to disclose to a provider's insurer or attorney the medical record of someone who was not a patient of the provider.

pretenses or through deception. Section 4–309(d) adds that a health care provider or other person who knowingly violates any provision of the subtitle is liable for actual damages. In his complaint, Warner has charged that Lerner obtained the report from Union Memorial's medical records "wrongfully, willfully and in violation of the above statute." Coupled with the factual allegations in the complaint, that suffices, in our view, as an allegation that he obtained the record knowingly under false pretenses or through deception. Lerner may, perhaps, be able to show, as a matter of fact, that, by virtue of some Union Memorial policy, he had permission from the hospital to obtain Mr. Warner's records for use in defending the malpractice action brought by Mr. Kelly, in which event his obtention of the report might not be by false pretense or deception. Implicit in Warner's allegations, however, is the contrary. We hold, therefore, that the Court of Special Appeals erred in affirming the judgment of the circuit court.

JUDGMENT OF COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED WITH INSTRUCTIONS TO REVERSE JUDGMENT OF CIRCUIT COURT AND REMAND FOR FURTHER PROCEEDINGS; COSTS IN THIS COURT AND COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

Concurring opinion by RAKER, J.

RAKER, Judge, concurring.

I join in this opinion of the Court in so far as the Court holds that § 4–305(b)(1)(ii) does not authorize Dr. Lerner to obtain the medical records of Mr. Warner entirely on his own. The Court reasons that § 4–305(b)(1)(iii) "deals with when a health care provider [Union Memorial Hospital] in possession of medical records is allowed, *in its discretion,* to disclose them without the authorization of the patient." Maj. op. at 739, 705 A.2d at 1173.

I write separately to make clear that I reject the "expansive reading" of the statute given by the lower courts[1] and thus

---

1. The Court of Special Appeals held:

reject any notion that Union Memorial Hospital had discretion to disclose Mr. Warner's medical records pursuant to § 4–305. I do not believe that it is within the discretion of a hospital under § 4–305 to assist a doctor in the defense of a malpractice action by releasing to the doctor's insurer or legal counsel records of a person other than the plaintiff. I would hold that under the circumstances of this case, without Mr. Warner's authorization, Union Memorial Hospital could not lawfully disclose Mr. Warner's medical records.

The Preamble to the Maryland Confidentiality of Medical Records Act manifests the intent of the General Assembly to protect the privacy of patients and to maintain the confidentiality of medical records, while establishing clear and certain rules for disclosure of those records. The Preamble to the Act states:

WHEREAS, Medical records contain personal and sensitive information that if improperly used or disclosed may result in significant harm to the emotional, financial, health care, and privacy interests of a patient or recipient; and

WHEREAS, Patients and recipients need access to their medical records to enable them to make informed decisions concerning their health care and to correct inaccurate or incomplete information about themselves; and

WHEREAS, In order to retain the full trust and confidence of patients and recipients, health care providers have an interest in assuring that the information in medical records will not be improperly disclosed, and that clear and certain rules exist for the disclosure and redisclosure of this information; and

WHEREAS, In order to protect the privacy of a patient or recipient, that disclosure of information from a medical

---

By appointing the plain language of the statute, and disregarding the potential problems associated therewith ..., it is patent that the language of § 4–305(b)(1)(iii) permitted Lerner, through his counsel, to obtain Warner's medical records without his prior consent or authorization.

*Warner v. Lerner*, 115 Md.App. 428, 433, 693 A.2d 394, 396 (1997).

record without the authorization of a person in interest be limited to the information that is relevant to the purpose for which disclosure is sought and, when feasible and appropriate, to a review of the record by a person who acknowledges the duty not to redisclose the identity of the patient or recipient. . . .

1990 Maryland Laws ch. 480, at 2024. In this case, the interpretation given § 4–305 by the lower courts contravenes the purposes of the Maryland Confidentiality of Medical Records Act. The legislative history of the Act does not support the view that § 4–305(b)(1)(iii) allows a hospital to give medical records of *any* person to a physician's insurer or legal counsel if those records might somehow assist the physician in a threatened or actual lawsuit. If the hospital had such discretion, confidentiality of medical records would be illusory. *See Victor v. Proctor & Gamble*, 318 Md. 624, 631, 569 A.2d 697, 701 (1990) ("[A] statute should not be interpreted so as to produce an absurd result inconsistent with its purpose.") Records could then be published, without a patient's knowledge or consent, in a lawsuit in which the patient has no interest or connection thereto, and with no timely opportunity to object, complain, or to secure a protective order. The Court of Special Appeals recognized that "[t]he nature of the surgery performed on Warner was arguably personal and sensitive in nature. Many would experience unnecessary embarrassment on this basis." *Warner v. Lerner*, 115 Md.App. 428, 441, 693 A.2d 394, 400 (1997).

Disclosure of non-patient records could hardly have been the intent of the General Assembly when, in the interest of expanding the confidentiality of medical records, the General Assembly enacted the Maryland Confidentiality of Records Act. Warner is correct when he argues that "no citizen's medical and/or psychiatric records are safe from invasion and/or intrusion. Intimate facts about a citizen[']s medical, urological, gynecological and/or psychiatric history—highly intimate data—can be obtained by even the curious and/or the malicious. A public figure could thus have his records obtained for the purpose of embarrassing that individual and/or

discussing or releasing intimate facts of that individual's medical background." In light of the stated purposes of § 4–305, the General Assembly could not have intended such consequences.